COLORADO-FLORIDA LIVING, INC., a
Colorado corporation, et al.,
Plaintiffs,

v.

DELTONA CORPORATION, a Delaware
corporation, Defendant.

Civ. A. No. C-3230.

United States District Court,
D. Colorado.

March 17, 1972.

Ireland, Stapleton, Pryor & Holmes, Denver, Colo., for plaintiffs.

Davis, Graham & Stubbs, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

CHILSON, District Judge.

This matter is before the Court upon defendant's motion to dismiss the complaint for lack of jurisdiction over the defendant, for improper venue, for insufficiency of process and service thereof. The disposition of the motion requires a summary of the allegations of the complaint.

The complaint alleges diversity jurisdiction and states that the corporate plaintiff is a Colorado corporation, with its principal place of business in Colorado; that plaintiffs, Evans and Seabold, are citizens of the State of Virginia, and the defendant is a Delaware corporation. The complaint does not allege the principal place of business of the defendant corporation, but since the question has not been raised by the defendant, we assume that its principal place of business was not in Colorado or Virginia.

As the basis for relief, plaintiffs allege that Deltona (the defendant) owns, develops, and sells real estate in Florida;

that in doing so, it grants franchises to dealers in various parts of the country to sell the Florida real estate to purchasers in the franchise territory; that between January 1, 1971, and March 18, 1971, one Malapert was the assistant general sales manager for Deltona, and as such, had discussions with Evans and Seabold, encouraging them to go to Colorado and establish an office as the sales representatives of Deltona for the State of Colorado; that Malapert promised Evans and Seabold that they would be granted a franchise by Deltona in Colorado; that Evans and Seabold resigned their then employment and moved to Colorado; that about January 27, 1971, Malapert came to Colorado and met with Evans, Seabold, and one, Hickey, at which meeting, Malapert promised that they would receive a franchise for Deltona for the State of Colorado; that Hickey, a licensed Colorado Real Estate Broker, would be invited for a Florida inspection trip, and that following such trip, Hickey would be authorized to begin selling as Deltona's sales representative in Colorado under the name of Colorado-Florida Living, Inc.; accordingly, Hickey went to Florida, where Malapert introduced Hickey to persons in Deltona's Miami offices as Deltona's Colorado Dealer; that while in Florida, other officers and employees of Deltona discussed with Hickey the operation and management of the Colorado dealership; that prior to his return to Colorado, Hickey was assured that he or Colorado-Florida had the Deltona franchise for Colorado; that it would be operated under Hickey's Real Estate Broker's license until such time as Evans and Seabold obtained such a license for use by Colorado-Florida; that Hickey's trip to Florida was paid for through Deltona's Colorado dealership number; that Seabold, Evans, and Hickey formed a Colorado corporation—Colorado-Florida—to be Deltona's sales representative in Colorado, and that Deltona was aware thereof; that Colorado-Florida received from Deltona, customer's lists, contracts, and other sales materials at its offices in Denver; that on or about March 4, 1971, Malapert arranged for Seabold to fly to Marco Island, a Deltona development to show a Colorado-Florida-sponsored customer Marco Island investment opportunities; that Seabold flew to Marco Island and met there with Malapert, who in front of a Deltona customer discussed the setup and Deltona's arrangements with Colorado-Florida; that at that time, Malapert assured Seabold that the franchise had been awarded to Colorado-Florida; that Malapert arranged to be in Denver on March 15, 1971, to formalize the franchise document; that on that date, Deltona wired Hickey that Deltona had disapproved the franchise.

The question before the Court is, assuming these allegations to be true, do they constitute "the transaction of any business . . ." within the State of Colorado, which would authorize service of process upon the defendant outside the State of Colorado.

C.R.S.1963 Permanent Supplement 1965 37–1–26 enacted in 1965 provides:

> "(1) (a) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person, and, if a natural person his personal representative, to the jurisdiction of the courts of this state, concerning any cause of action arising from:

> (b) The transaction of any business within this state;"

The foregoing section of the Colorado Statute is substantially the same as the Illinois Long Arm Statute, and the Supreme Court of Colorado in construing its Long Arm Statute has stated it frequently gives prime consideration to Illinois precedent when necessary to interpret such a statutory provision. Vandermee v. Dist. Ct., 164 Colo. 117, 121, 433 P.2d 335 (1967).

Turning to the case law of Illinois, in Kropp Forge Co. v. Jawitz, 37 Ill.App.2d 475, 186 N.E.2d 76 (1962) plaintiff, a resident of Illinois, corresponded with

defendant, a resident of New York. Defendant visited plaintiff's plant in Illinois for one morning. There was a dispute as to where the contract was made. The Court upheld service of process by finding that activity in furtherance of a contract is sufficient to give the court jurisdiction. If the defendant purposefully avails himself of the privilege of conducting business in Illinois, this is enough to give the court jurisdiction.

 It is not even necessary that defendant or his agent be physically present in the state for the purpose of transacting business. Koplin v. Thomas, Haab & Botts, 73 Ill.App.2d 242, 219 N. E.2d 646 (1966).

In Knight v. District Court of Seventeenth Jud. Dist., 162 Colo. 14, 424 P.2d 110 (1967) the court upheld service of process where defendants, residents of Utah, came to Colorado and borrowed $30,000 from a Colorado bank and cited the *Kropp Forge* case (*supra*) among others in support.

We are satisfied that the facts alleged in the complaint disclose the necessary minimum contacts which International Shoe Co. v. State of Washington, 326 U. S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) held due process requires in order to subject a non-resident defendant to an in personam judgment.

Applying this case law, the court determines that the cause of action in this case arises from the transaction of business by Deltona within the State of Colorado, and that Deltona was in this case subject to the service of process outside of the State of Colorado in accordance with the Colorado Long Arm Statute.

The defendant's motion to dismiss also raises a question of venue. 28 U.S.C. § 1391 provides:

"(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose."

Since we have determined that the cause of action arose from the transaction of business by Deltona within the State of Colorado, the action arose within the State of Colorado, and the District of Colorado is a proper venue.

It is therefore ordered that the motion to dismiss the complaint is denied, and the defendant shall answer the complaint within fifteen days from this date.